# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# 2:05cv1

ANITA DUNCAN; NAOMI DUNCAN; )
MARY McCOMBS; and SCOTT )
SCROGGS, )
　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　)
Vs. ) ORDER
　　　　　　　　　　　　　　　　　)
PHOENIX SUPPORTED LIVING, INC.; )
and TONY SCHMIDT, )
　　　　　　　　　　　　　　　　　)
　　　　　　Defendants. )
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿ )

**THIS MATTER** is before the court on plaintiffs' and conditional plaintiffs' Motion to Certify Class (#84), defendants' Motion for Sanctions (#86), and defendants' Motion to Decertify Collective Action (#87). A hearing was conducted on March 30, 2007, at which counsel for the respective parties appeared. The court has carefully considered all the briefs of the parties and the well presented oral arguments. Having considered the briefs and arguments of respective counsel, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

**I.  Conditional Plaintiffs' Motion to Certify Class (#84) and Defendants' Motion to Decertify Collective Action (#87)**

Previously, plaintiffs requested that the court conditionally certify a *Fair Labor Standards Act* statutory class of "similarly situated" persons under 29, United States

-1-

Code, Section 216(b). The prevailing view is that unlike standard class certification under Rule 23, Federal Rules of Civil Procedure, certification of a class under § 216(b) is two tiered. Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 263 (S.D.N.Y. 1997).

At the first tier, the court determines whether notice of the action should be given to *potential* members of the collective action by determining whether a conditional class should be certified. A conditional class under § 216(b) should be certified where moving plaintiffs show "that putative class members were together the victims of a single decision, policy, or plan that violated the law." Reeves v. Alliant Techsystems, Inc., 77 F.Supp.2d 242, 247 (D.R.I. 1999) (citation an corresponding quotation marks omitted). Based on an appropriate showing at the first tier, the court certified a conditional class.

Certification of a potential class at the first tier does not, however, guarantee the certification of an actual class at the second tier. The first tier determination is simple a decision whether notice of the action should be given to *potential* members of the collective action. Mooney v. Aramaco Services, Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995). After discovery is complete and more factual information is available to the court, defendant may file a motion to decertify the class, which it has properly done. At the second tier, a higher standard is used to analyze the "similarly situated" issue. Thiessen v. General Electric Capital Corporation, 996 F. Supp. 1071, 1080 (D. Kan.1998). Courts apply three factors in the second tier to determine whether opt-in plaintiffs are "similarly situated," including whether

    (1)    the potential plaintiffs have disparate factual and employment issues;

(2) the defendant has varying theories of defense as to each plaintiff; and

(3) fairness and other procedural considerations can be accommodated.

Moss v. Crawford & Co., 201 F.R.D. 398, 409-411 (W.D. Pa. 2000).

Defendant have argued and now have well shown that certification of a collective action should not be allowed because the circumstances of each particular employee's "contract" with defendants is likely to be different, their work differed, the home in which they worked had varying sleeping quarters and varying demands throughout the night, and plaintiffs will likely be required to prove and defendants will be required to defend against the specific circumstances of each and every collective member's employment. The only common thread running throughout the action is that the nine persons who responded to the class notice all worked for Phoenix, and from the three who actually took the time to participate in prelitigation discovery, it appears that each potential plaintiff had unique experiences during their respective tours of duty. Based on the showing now before the court, it cannot be said that the potential plaintiffs are in fact "similarly situated." Id.

**A. Disparate Factual and Employment Issues**

In this case, the putative plaintiffs all were employed by defendants as "Habilitation Assistants." As part of their duties, all were required, from time to time, to spend overnight periods at one of three different PSL premises. At this point, the facts and employment issue differ materially between the plaintiffs and the putative plaintiffs, with each having a unique employment experience. The discovery presented reveals material disparity between the potential plaintiffs as well as the

original plaintiffs as to the length of their scheduled work hours, the frequency with which they worked shifts of 24 or more consecutive hours, and when they were required to sleep on premises. Further, it appears that disparity exists as to the employment policies of defendant, with a major change being made in 2005, and with some employees working under the old policy before and the new policy after.

Under the statutory scheme, it appears the accommodations provided to the employee for sleep also ranged widely based on the home in which they worked. The evidence submitted indicates that depending on the location of where an employee was assigned to work, they would have varying sleeping arrangements from separate staff bedrooms to simply a sleeping couch. Further, complicating matter, the number of homes changed during the time of the plaintiffs' employment, but when the potential plaintiffs worked, all four locations were possible assignments for overnight shifts. Sleeping arrangements differed between these homes, and also changed from time to time. There is also a material difference in the nature of the claims brought by the plaintiffs, which include additional claims for discrimination, and the claims asserted by the potential defendants, which do not include claims beyond wage and hour claims.

**B.    Defendants' Defenses**

The second factor require consideration of whether defendants' defenses could be applied across the board to plaintiffs' claims and potential plaintiffs' claims or whether many and perhaps disparate defenses could be raised. Defendants' defenses will include the contract with each employee, each plaintiff's or potential plaintiff's

sleeping situation, and defendants will no doubt be compelled to both assert and argue individualized defenses based on the nature of the agreement between the parties, the duration of the shift during which an employee worked an overnight tour, the location and type of sleeping arrangement provided to the employee, and whether the employee was able to obtain significant sleep without interruption. Unlike litigation involving a class of employees with the same job description doing the same task regardless of location, such a shelf stocker in a grocery store, it appears that each of these employees faced different circumstances based on the home in which they worked, and because the ability of each particular employee to receive uninterrupted rest for a specific period is material as to whether a violation has occurred, the proof will be different as to each employee and the defense[s] which defendants may wish to assert will vary based on such unique experience.

### C. Fairness and Procedural Considerations.

This court has longed called on juries to do tasks which seem daunting, including joint trials in complex drug conspiracies involving multiple defendants. In determining the extent of any alleged prejudice in criminal, the court considers whether, under all the circumstances, it is within the capacity of the jury to follow the court's instructions to keep separate the relevant evidence as to each defendant. United States v. Diaz-Munoz, 632 F.2d 1330 (5th Cir. 1980). Determination of whether the alleged potential for prejudice rises to constitutional levels pivots on the complexity of the charges and the number of defendants, and severance is proper only if the complexity of the charges and the number of defendants could potentially create

a situation where a jury could not be expected to evaluate the evidence properly as to each charge and defendant or follow *in limine* instructions as to each defendant. Opper v. United States, 348 U.S. 84 (1954).

In the civil context, the court's compelling interest in having parties that have been indicted together tried together is not present. Instead, the court balances the remedial objectives of the statutory scheme with fairness and procedural factors applicable to the respective parties. The primary objectives of a §216(b) suit such as this are: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same controversy. Hoffman La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).

Clearly, the proposed collective action has the potential to lower costs for plaintiffs, although, it appears that such may not have actually occurred in this case. The potential to resolve common issues of fact and law does not, however, appear to be present.

The court has also considered the potential for prejudice. Because each plaintiff and potential plaintiff would be called upon to testify as to their particular experiences with sleep accommodations and interruptions they may have experienced, as well as other terms and conditions of their employment, defendants could be potentially prejudiced by a jury painting with a broad brush. Not to put too fine a point on the issue, but these employees are unlike typical minimum wage earners inasmuch as they are were apparently entrusted with a great deal of responsibility for

the care and well being of others, which necessarily required a wide range of interruption to sleep that was dependent upon the level of need of the residents of the home they were assigned. Rather than paying such highly trusted employees an hourly wage, one might have assumed that such employees would be salaried, which may have better reflected the "all duties" nature of this specialized type of employment. Defendants have made clear through their proffer that the terms and conditions of employment of each individual varied, and that the potential for prejudice outweighs the statutory concern for reductions in costs.

Finally, in decertifying the potential class, the court finds that there is clear line of demarcation in the claims of the three plaintiffs herein and the claims of the potential claimants. The plaintiffs in this case have all asserted claims for discrimination in addition to wage and hour violations, while the potential plaintiffs only assert claims for wage and hour. Inasmuch as civil rights and civil liberties are at the heart of our democracy, it would be next to impossible for a jury to wall off plaintiffs' claims of discrimination in its consideration of potential plaintiffs claims, which do not include such claims. Clearly, the potential for taint weighs against certification.

* * *

Having considered the relevant factors, the court cannot find that the potential class can be managed in a manner that would prevent prejudice to any party. The Plaintiffs' and conditional plaintiffs' Motion to Certify Class (#84) will be denied and defendants' Motion to Decertify Collective Action (#87) will be granted.

## II.  Defendants' Motion for Sanctions

Defendants have also moved for the sanction of dismissal under Rule 37(d), Federal Rules of Civil Procedure, for six of the nine potential plaintiffs' failure to attend noticed depositions.  Rule 37(d) applies, however, only to misconduct of parties.

In certifying a *conditional* class with notice sent to *potential* plaintiffs, the court did not allow and the statute does not contemplate that such individuals would be *parties* to this action simply through indicating a desire to opt-in.  Indeed, if such automatic status as a party was granted, there would be no need to conduct the second-tier analysis the court just completed.  Thus, Rule 37(d) has no application and the court will not dismiss any action because of such misconduct because there is no action to dismiss.

Instead, the court has crafted what it believes is an equitable remedy.  First and foremost, litigants and those who may wish to join in ongoing litigation in federal court have a duty to participate in necessary proceedings and communicate with their counsel.  The six potential plaintiffs identified by defendants in their pleading clearly fell well short of this expectation.  As a result, defendants incurred substantial costs in attorney and staff time, travel expenses, and the costs of court reporters.  It would, therefore, be inequitable to ask defendants to bear these costs.  At the hearing, counsel for the potential plaintiffs indicated that these six individuals are people of modest means and simply could not afford the gas to attend the noticed depositions and likely could not be reached because they may have had phone service shut off due

to non-payment. Based on such arguments, the court will not impose any present monetary sanction or impose any monetary limitation on such plaintiffs' filing of an action in this court. Rather, the court will grant defendants leave to file motions for determination and imposition of costs in any action or collective action such plaintiffs may hereinafter file against these defendants, and payment of any such costs shall not be considered to be prerequisite to proceeding or prosecuting such action. Defendants' Motion for Sanctions' will, therefore, be denied without prejudice herein, and may be reasserted in any subsequent action filed by the six identified potential plaintiffs.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiffs' and conditional plaintiffs' Motion to Certify Class (#84) is **DENIED**, defendants' Motion for Sanctions (#86) is **DENIED** without prejudice, and defendants' Motion to Decertify Collective Action (#87) is **GRANTED**.

Counsel are invited to schedule an appointment for an in-chambers conference concerning any discovery or mediation needs.

Signed: March 30, 2007

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge